[PHILADELPHIA, APRIL 3d, 1837.]

## MESSINGER and Another *against* HAGENBUCH.

### IN ERROR.

In an action to recover damages for falsely and fraudulently affirming that a certain tract of land which the plaintiffs had agreed to purchase from the defendant, contained 100 acres, when in fact it contained only 84 acres; it appeared that the defendant had purchased from A., but at the time he agreed to sell to the plaintiffs, had not received a conveyance from A. *Held*, 1. That a memorandum containing certain figures, of a number of acres and perches, making a gross amount of 100 acres, which was sworn by a witness who had been an assistant to A. to be in *his* own hand-writing, although he could not recollect any of the circumstances under which it was written, was *admissible in* evidence on the part of the defendant, to rebut the allegation of fraud. 2. That evidence was not admissible on the part of the plaintiffs, of a recovery of damages against them, for not performing an agreement to execute a lease of the premises to a third person, which they did not execute, in consequence of the defendants not being able to make a conveyance for the 100 acres.

ON the return of a writ of error to the Court of Common Pleas of Northampton county, it appeared that a special action on the case, for deceit, was brought by Philip Messinger and Peter More, against Christian Hagenbuch, to recover damages from the defendant, for falsely and fraudulently deceiving the plaintiffs, by affirming that a certain tract of land which they agreed to purchase from him, contained 100 acres, when in truth the defendant well knew that the said tract contained but 84 acres and 45 perches, and not any greater quantity of land.

(Messinger v. Hagenbuch.)

The declaration contained four counts. 1. For inducing the plaintiffs to execute a certain article of agreement, by which they agreed to pay to the defendant $9500, in consideration of which the defendant agreed to convey to the said plaintiffs, the said tract in fee simple, as tenants in common. 2. The second count set forth that relying upon the false statements of the defendant, the plaintiffs collected from sundry persons indebted to them, large sums of money to meet their engagements with the defendant, which sums of money afterwards lay idle in their hands. 3. That relying upon the false statements of the defendant, the said Philip Messinger, with the consent of the said Peter More, contracted with a certain Wm. Levers, to demise to him a part of the premises for one year, upon which contract the said Wm. Levers brought suit and recovered $381 damages, by reason of the failure of the said Philip Messinger to comply with the said contract, which failure was owing to the deceitful statements of the defendant. 4. That relying upon the false statements of the defendant, the plaintiff, Philip Messinger, with the consent of Peter More, prepared to remove with his family upon the said premises, and to keep a house of public entertainment, but was hindered therefrom by reason of the false statements of the defendant, and for the space of one year was thrown out of employment, &c.

The defendant pleaded not guilty; and the cause came on for trial on the 29th of November, 1836, when the plaintiffs gave in evidence certain articles of agreement, made the 5th day of March, 1832, between the defendant and them, by which the defendant covenanted to convey to them, on or before the 1st day of April, then next ensuing, a certain messuage and lot of land " situate in Upper Nazareth township, in the county of Northampton, adjoining lands of — Kind, John Dech, &c. containing about one hundred acres, strict measure, more or less," in consideration of which the said Philip Messenger and Peter More agreed to pay to the said Christian Hagenbuch, the sum of $9500, as follows, viz.: $5000 on the 1st of April following, when the deed and possession were to be delivered; and the balance on the 1st of April, 1833.

The plaintiffs also proved that at the time the agreement was made, the defendants represented the number of acres to be about 100, " that there might be a little more or a little less."

The plaintiffs then offered in evidence the books of assessment in Upper Nazareth township, from the year 1826 to 1831, both inclusive, for the purpose of showing that the defendant had returned the number of acres in 1826, 1827, and 1828, as 63, and in 1829, 1830 and 1831, as 81: to the admission of which documents the defendant objected, but the court overruled the objection, and admitted the evidence.

After other testimony had been given to show the actual number of acres, and the knowledge of the defendant, the plaintiffs offered in

evidence a lease made on the 24th of March 1832, by Philip Messinger to Wm. Levers, of the premises, describing them as the same which the said Philip Messinger recently purchased from Christian Hagenbuch, " containing about 100 acres," for the term of one year; together with the record of an action of covenant, brought by William Levers against Philip Messinger, upon the said lease, in which there was a recovery against the said Philip Messinger, of $381. To the admission of which evidence, the defendant's counsel objected, and the court sustained the objection; to which the plaintiffs' counsel excepted.

The plaintiffs then offered Wm. Levers to prove the payment of the damages recovered by him, in consequence of the non-performance of the covenants to deliver possession of the demised premises; but the court rejected this evidence also, and the plaintiffs' counsel excepted.

On the part of the defendant, the deposition of a certain Eugene Augustus Freeauff, taken under a commission issued to the kingdom of Saxony was offered in evidence. It appeared that a certain slip of paper, containing merely the following figures and words—

" 15 acres 124 perches.
   10   "     13   "
   18   ".     72   " "

had been attached to the commission, and the witness was interrogated as to the handwriting, and for what purpose it was written, &c. In his answer to the interrogatories, he stated that he recognized the handwriting to be his own, but had no recollection of the subject-matter, nor at what time, nor by whose order it was done, &c.

The plaintiffs' counsel objected that the evidence was irrelevant, and the paper referred to not proved, but the court overruled the objection, and permitted the deposition to be read, to which the plaintiffs' counsel excepted.

A verdict having been rendered for the defendant, the plaintiffs took a writ of error, and assigned for error the rejection of the evidence offered by them, and the admission of the deposition offered by the defendant.

Mr. *Ihrie*, for the plaintiff in error, contended,

1. That the record of the suit against Messinger, and of the payment of the damages recovered from him, ought to have been admitted. 5 *Co.* 24; 1 *Saunders Rep.* 116; *King* v. *Atkins*, (1 *Sid.* 442.) *Waldo* v. *Long*, (7 *Johns. Rep.* 173.)

2. That the deposition of Freeauff ought not to have been admitted. *Weidler* v. *Farmer's Bank*, (11 *Serg. & Rawle*, 139.) *Packer*

(Messinger *v.* Hagenbuch.)

v. *Gonsalas*, (1 *Serg. & Rawle*, 532.) *Blackburn* v. *Halliday*, (12 *Serg. & Rawle*, 141.) *Vickroy* v. *Kelly*, (14 *Serg. & Rawle*, 372.) *Wilson* v. *Stoner*, (9 *Serg. & Rawle*, 42.) *Thompson* v. *Willet*, (13 *Serg. & Rawle*, 127.) *Wood* v. *Ege*, (2 *Watts*, 338.) *Star* v. *Bradford*, (2 *Penn. Rep.* 384.) *Hugh* v. *Doyle*, (4 *Rawle*, 291.) *Foster* v. *Shaw*, (7 *Serg. & Rawle*, 164.) *Chew* v. *Parker*, (3 *Rawle*, 298.) *Coe* v. *Hutton*, (1 *Serg. & Rawle*, 407.) *Berks co.* v. *Myers*, (6 *Serg. & Rawle*, 12.) *Boyd* v. *Boyd*, (1, *Watts*, 366.) *Kendall* v. *Lee*, (2 *Penn. Rep.* 482.)

Mr. *Porter*, for the defendant in error, cited *Stillwell* v. *Evans*, (1 *Penn. Rep.* 383.) *Callon* v. *Gaylord*, (3 *Watts*, 321.) *Simpson* v. *M'Beth*, (4 *Watts*, 409.) *Hurst* v. *M'Neill*, (1 *W. C. C. R.* 71.) *Respublica* v. *Davis*, (3 *Yeates*, 128.) *Longenecker* v. *Hyde*, (6 *Binn.* 1.) *Marsh* v. *Pier*, (4 *Rawle*, 278;) 2 *Hen. & Munf.* 139 ; 1 *Paine*, 549.

The opinion of the court was delivered by

KENNEDY, J.—The third error, which is the last, I shall notice first; because, if it be not tenable, the others would seem, in that case, to be immaterial.

The question presented by the third bill of exceptions, which is the ground of the third error assigned, is, was the paper referred to in the deposition of Eugene Augustus Freeauff, and proven by him to be in his handwriting, material, as evidence, to the issue.

Part of the land, consisting of several lots or parcels, which the defendant agreed to sell to the plaintiffs, had been purchased, as it appears from the evidence, by this defendant of the Rev. Lewis David Von Schweinitz, then of Bethlehem, Pennsylvania, who held it, among other lands, in trust for the society styled " *The Unitas Fratrum*" of that place ; and though paid for by the defendant, when he agreed to sell it to the plaintiffs, had not been conveyed by deed to him, so as to invest him with the legal title. According to the testimony of Eugene A. Freeauff, he was an assistant to the Rev. Mr. Von Schweinitz, when the defendant bought this land, and as the defendant alleges, gave to him the paper in question, indicating the number of acres in the several parcels of land which he had purchased of the Rev. Lewis D. Von Schweinitz. And notwithstanding Eugene A. Freeauff, the witness, has no recollection whatever of his making the writing on the paper, nor of the time, and the occasion or purpose for which it was made, nor to whom it was given, yet he knows it to have been made by himself, because it is of his handwriting; and he further states, that he recollects to have seen the defendant in the office of the Rev. Lewis D. Von Schweinitz, paying money to the latter, and that he probably made the writing on the paper from the books of the Rev. Lewis D. Von

(Messinger *v.* Hagenbuch.)

Schweinitz, but does not recollect any thing at all of the particular circumstances. It also appears that the defendant, after he contracted to sell the land to the plaintiffs, obtained a deed of conveyance for that part of it, which he had previously purchased of the Rev. Lewis D. Von Schweinitz, dated the 14th of March, 1832, describing it as consisting of three lots or parcels, the same number that is mentioned on the paper; the first as containing 5 acres and 61 perches; the second, 13 acres and 11 perches, and the third 10 acres and 18 perches. Now by comparing the parcels of land conveyed by this deed, it not only appears that the number of parcels thereby conveyed, corresponds with the number mentioned in the paper in question, but that the sum of the first and second parcels conveyed by the deed, makes the same quantity with the parcel last mentioned in the paper, which is 28 acres and 72 perches, and that the last parcel mentioned in the deed, is the same in quantity with the second mentioned in the paper. It would therefore, rather seem as if there had been some connexion between the making of this paper, and the purchase of the land by the defendant, of the Rev. Lewis D. Von Schweinitz. The only circumstance which appears to militate against this, is, that none of the parcels of land conveyed by the deed, is described as containing 15 acres, 124 perches, as mentioned in the first parcel on the paper. But this descrepancy may readily have arisen from the mistake of the witness, in making out the memorandum on the paper. This paper then, seeing the defendant had no agreement in writing, that we know or have heard of, specifying the number of acres of land purchased by him of the society, or their trustee, may be presumed therefore to have been obtained by him, for the purpose of showing not only the number of parcels of land so purchased, but the number of acres also in each parcel. And if procured by him for this purpose, the only fair conclusion is, that he was misled by it, in regard to what he said of the number of acres contained in the land, which he agreed to sell to the plaintiffs. For had the statement made on the paper been accurate in this respect, it would have given the defendant fifteen acres, one hundred and twenty perches more than he got by the deed, which added to the eighty four acres and forty-five perches, admitted by the plaintiffs in their declaration to have been held and owned by him, would' have made in the whole one hundred acres and nine perches, the quantity which he alleged, and seemed to think that he had. These conclusions seem to be so very striking and natural, that it has been said, in order to avoid them, that it does not appear from the evidence when the defendant first obtained this paper, whether before or after he agreed to sell to the plaintiffs, and that it may be, that he procured it afterwards with a view to relieve himself from the charge of wilfully misrepresenting the quantity of land, which he agreed to sell to the plaintiff. But this would not be dealing fairly with him, and would be contrary to the rule of

law, which requires that every man shall be deemed innocent until the contrary be made to appear; and again that fraud shall not be presumed without the proof of such circumstances, at least, as will warrant it. Consequently, until the contrary was shown, it was to be presumed that the defendant had obtained the paper fairly, and with an honest intent; and more especially so, as he had done all that he could in order to show that he had possessed himself of it innocently, and merely as a memorandum, with a view to show the extent of his purchase from the society, by appealing for this purpose to the testimony of Eugene A. Freeauff, who from his connexion with the thing itself, was the most likely, of all others, to be able either to support or to contradict the truth of the defendant's allegation in regard to it, and if untrue, to expose the fraud. But even supposing that other evidence had been given, tending to prove that the defendant had obtained the paper with a fraudulent design, was it not still a question of fact to be referred, with all the evidence relating to it, to the jury to be decided by them?

Upon full consideration, we are inclined to think that the paper was proper evidence to be submitted to the jury, in connexion with the testimony of Eugene A. Freeauff, for the purpose of repelling the fraud charged against the defendant; and though it may have been but slight evidence to acquit him of the imputation, still we think it was such as might be fairly entitled to some weight and consideration by the jury, and that it was therefore properly submitted to them.

The other errors, are founded upon bills of exception to the opinion of the court below, in rejecting the lease executed by Philip Messinger, one of the plaintiffs, by the consent of the other plaintiff, as it is said, to William Levers, for part of the land agreed to be conveyed by the defendant to the plaintiffs; the record also of an amicable action thereon, by Levers against Messinger for a breach of his covenant, contained in the lease, by not delivering possession of the land in conformity thereto; and of a judgment rendered therein against Messinger for three hundred and eighty-one dollars damages, besides costs of suit, together with the testimony of Levers, showing that these damages and costs so recovered, had been actually paid by the plaintiffs. Now it is perfectly clear, that this evidence, had it been permitted to go to the jury, could not at most be said to have had a tendency to prove any thing more than the damages, and the amount thereof, which the plaintiffs alleged they had sustained and been compelled to pay, in consequence of the defendant's having fraudulently induced them to enter into the contract with him for the purchase of the land. And it is also equally clear, that the *gist* of the plaintiff's action here is a fraud, alleged by them to have been committed by the defendant; and that without proof of the fraud, they had no right to claim or recover any damages whatever. But the jury have found in favour of the defendant,

(Messinger *v.* Hagenbuch.)

and acquitted him entirely of the fraud, for had they believed him guilty of the fraud, it would have been their duty to have found a verdict against him in favour of the plaintiffs, for nominal damages at least, though no proof had been made of actual damages having been sustained by the plaintiffs. Hence the evidence mentioned in the two first bills of exception, could not have been material, nor have changed the verdict of the jury in favour of the plaintiffs. They therefore would seem to have no ground for saying that they were prejudiced by the rejection of it.

But independently of this consideration, we think the evidence was inadmissible upon other grounds. The plaintiffs were certainly premature in undertaking to lease the land or any part of it, as they did, before they had acquired a right and control, at least, over the possession of it. The utmost that they could have done with any propriety, at the time they made the lease to Levers, was to have given him a conditional promise to make such a lease, in case they, on the first of April following, became the owners of the land, and obtained the possession of it. As well might a creditor, to whom a debt of one thousand dollars, or any other sum is due, and payable at a future day, undertake in the mean time to speculate on, and dispose of the money before the receipt of it from his debtor, by entering into an obligation to let another have it on certain terms, and because his debtor fails to pay at the time appointed, then to make him accountable for all the damages and costs, to which he, the creditor, may have subjected himself, and been compelled to pay under his contract, on account of his inability to comply with it, for want of the money coming from his debtor. This would be extending the liability or obligation of the party, beyond what he could have contemplated, and of course beyond the legal import of the contract, as well as the common and ordinary understanding which prevails in regard to it. Besides it is easy to perceive, that it would be putting it in the power of the creditor in some instances, if not in all, where the debtor may be unable to pay at the day appointed, to ruin him, if he were to be held responsible for all the losses accruing to the creditor, in consequence of the latter not receiving the debt due to him, on the day assigned for the payment of it. So in a case like the present, if such a principle were to obtain, the plaintiffs, before the day came round, at which they, upon fulfilling their part of the contract, would have been entitled to have demanded a title for the land from the defendant, might have gone on, and contracted for the purchase of materials to the value of thousands of dollars, for the purpose of erecting expensive buildings and improvements upon the land; and have engaged mechanics and other workmen to commence putting up the same, as soon as the time should arrive, when they were to obtain the title; and because the defendant failed in making a title, and in surrendering the possession of the land according to his agreement, might

thus render him liable to pay many thousands of dollars above the real value of the land itself. Such an extent of liability would make all executory contracts unsafe and perilous in the extreme: it would put it out of the power of a party to such contract, to form even a conjecture in regard to the measure of compensation, that he would become liable to make in case of his failing to comply with his contract, if he were to be held responsible to the other for the loss of all speculative gain that might have been realized by the latter, had the former fulfilled his contract punctually; or for the loss and damages which the latter might be subjected to, and have to pay on account of his failure to comply with his contracts made in anticipation of the former fulfilling his.

It may, however, be said, that this is not a case where the defendant failed or neglected to comply with his contract, but one where the plaintiffs considered it their interest not to comply with it on their part; nor to accept a performance thereof from the defendant, because of the fraud alleged to have been practiced by him, in prevailing upon them to make the contract. This is certainly true, for it seems that the defendant offered to fulfil his part of the contract, but the plaintiffs refused to comply with their part of it, alleging that the defendant had knowingly deceived them as to the real quantity of the land. The plaintiffs therefore sought to rescind the agreement, and accordingly refused to carry it into execution, in which, it would seem, that the defendant acquiesced, after offering to perform his part. If the plaintiffs had performed their part of the agreement, and taken the title which the defendant tendered them, it is evident that they could have fulfilled their agreement in the lease with Levers, because the title, which the defendant offered to give them, covered all the land which they had leased to Levers, so that it may be said to have been, measurably, a matter of choice with the plaintiffs, that they did not fulfil their agreement with him.

But even under this view of the case, it is difficult, if not impossible to discover any solid grounds upon which the plaintiffs would be entitled to recover the damages claimed here, more than under the former view taken of it; because the same objection still recurs, that the plaintiffs undertook to make a lease of the land before they had acquired, or become invested with any right or title authorising them to do so; besides the additional one, that they might if they had pleased, have fulfilled their agreement with Levers, and thus have avoided the payment of the damages and costs recovered by him.

Judgment affirmed.